# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:13-CR-00275-FDW-DCK

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **KENNETH FITZGERALD BROWN,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant Kenneth Fitzgerald Brown's ("Defendant") Motion to Suppress Evidence (Doc. No. 8), the magistrate judge's Memorandum and Recommendation ("M&R") (Doc. No. 20) recommending that Defendant's motion be denied, Defendant's Objection to the Memorandum and Recommendation (Doc. No. 24), and the Government's Response. (Doc. No. 25). After reviewing the briefs, testimony and evidence presented before the magistrate judge, as well as the relevant case law, the Court OVERRULES Defendant's objections, ADOPTS the M&R's recommendation, and DENIES Defendant's pending motion.

## I. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). If a party timely files "specific written objections" to the proposed recommendations, the "district judge must consider *de novo* any objection to the magistrate judge's recommendation." FED. R. CRIM. P. 59(b)(3).

Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II. FINDINGS OF FACT

Defendant is charged by Bill of Indictment with being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) (Doc. No. 1), and Illegal Possession of Marijuana in violation of 21 U.S.C. § 844(a) (Doc. No. 7). On December 19, 2013, Defendant filed a Motion to Suppress the marijuana, marijuana paraphernalia, United States Currency and gun recovered, as well as any statements made during a search of Defendant's residence April 5, 2013. (Doc. No. 8). The Government filed its Response in Opposition (Doc. No. 16) on January 3, 2014, and the magistrate judge conducted a hearing January 28, 2014.

On April 5, 2013, Officers B. K. Russell ("Russell") and R. M. Anderson ("Anderson") visited Defendant at his residence to conduct an investigatory follow-up of a break-in that occurred at Defendant's home the night before. Defendant does not dispute he invited both officers into his residence at this juncture. Russell entered Defendant's living room through the front door and immediately smelled the odor of burnt marijuana. Three people were in the living room: Defendant, Defendant's son, and a repairman working on the back door. After fifteen minutes conversing with the officers inside the residence, Defendant led both officers to the backyard. While outside, Anderson tapped her nose in Russell's direction. Officer Russell testified "that's something we typically do. … If we made any kind of – you know, I guess notice of an odor like [marijuana], that would be the way we would indicate that between ourselves …" (Tr. at 13).

While still outside, Russell told Defendant he smelled marijuana. Defendant admitted there was marijuana inside the home, and Russell asked if he could go inside to retrieve it.

2

Defendant verbally consented, opened the front door of the home and stood sideways, motioning for the officers to re-enter. Once inside, Russell asked Defendant where the marijuana was located, and Defendant said it was in the bedroom. Defendant led both officers to a partially closed door and asked if the officers could wait outside while he entered the room to ensure his girlfriend was "decent." (Tr. at 16-17). Russell allowed Defendant to enter the room and close the door. Defendant opened the door after a minute or two and Russell observed Ms. Katie Gowen, Defendant's girlfriend, lying on the left side of the bed. Russell inquired again about the marijuana. Defendant handed Russell an aluminum foil, homemade pipe that appeared to contain marijuana residue and a container that appeared to hold several marijuana roaches.

Reacting to Defendant's heightened nervousness at the time, Russell asked if there were any weapons in the house. Defendant answered yes, proceeded to the left side of the bed and grabbed a gun from under the mattress. Russell repeatedly instructed Defendant not to retrieve the gun but Defendant removed the clip from the gun, ejected a live round from the chamber, reloaded the round into the clip, and placed the gun and clip on the bed. In the same few seconds, Russell released the small, belted latch over his own weapon but did not draw.

At that point, Russell smelled the odor of "green marijuana" and asked Defendant if there was any more in the home. (Tr. at 22). Defendant told Russell there was marijuana, and Ms. Gowen handed a jar of what appeared to be marijuana to Russell. Russell asked if he, Anderson, Defendant and Ms. Gowen could talk further in the living room and Defendant agreed.

After Defendant and Ms. Gowen led Russell and Anderson to the living room, Russell asked Defendant for consent to search the rest of the residence. Defendant asked about the process, and Russell explained that Defendant could consent as he had up to that time, or if he declined, Russell would apply to a judge for a search warrant. Defendant's son, who was present

3

in the living room, advised Defendant to require the officers to obtain a search warrant. Defendant chose to consent to the search, and Russell went out to his patrol car to retrieve the paperwork and call for additional officers. Upon Russell's return, Defendant reviewed, signed, and dated the consent to search form. The additional officers arrived, and Defendant himself opened the door for one of the officers and allowed him inside the house. During this time, Defendant got up to pay the repairman for the repair of the back door. In addition to the marijuana, paraphernalia, gun and ammunition found, officers took photographs and seized United States Currency. Both the Defendant and Ms. Gowen were placed under arrest.

At the hearing, the Government called one witness, Officer Russell, and Defendant took the stand in his own defense. After the M&R was issued on April 2, 2014 (Doc. No. 20), and the Court granted Defendant an extension of time, (Doc. No. 22), Defendant filed his Objection to Memorandum and Recommendation April 22, 2014. (Doc. No. 24). The Court has carefully reviewed the record, including listening to the recording of the suppression hearing, and finds the issues ripe for de novo review.

### III. DISCUSSION

Defendant offers several objections to the findings contained in the M&R. After conducting a careful review of the M&R, the Court finds no error in, summarily agrees with, and adopts those portions of the M&R to which no objection was raised. The Court now turns to Defendant's specific objections.

#### A. CREDIBILITY

Defendant's objections are based largely upon the M&R's attribution of greater weight and credibility to Officer Russell's testimony rather than Defendant's. In addressing these objections, the Court notes that a reviewing court must take a deferential standard regarding the

credibility of witnesses where the magistrate judge sits as trier of fact. See United States v. Stoots, No. 97-4038, 1997 U.S. App. LEXIS 32787, at *2 (4th Cir. Nov. 20, 1997) (unpublished table decision); McNairn v. Sullivan, 929 F.2d 974, 977 n.3 (4th Cir. 1991); United States v. Brooks, No. 1:05CR248-1, 2006 U.S. Dist. LEXIS 25626, at *3-4 (W.D.N.C. March 15, 2006).

At the hearing, the testimony from Officer Russell and Defendant was considerably at odds, and in the end, a credibility determination regarding the conflicting testimony was necessary to determine the facts of the matter. (Doc. No. 20). Both parties agreed Defendant invited the officers into his home to investigate the break in; however, the parties disagreed as to whether Defendant allowed the officers back into his home and voluntarily consented to a broad search of his home.

Defendant contends the Government failed to impeach any of Defendant's testimony and "its unclear how … [Defendant's] testimony was 'not clearly credible.'" (Doc. No. 24). After listening to the recording of the suppression hearing, there is no question as to why the M&R attributes greater weight to Officer Russell. Much of Defendant's testimony recounting the events that transpired April 5, 2013, is simply illogical. According to Defendant, Officer Russell had a "heated moment" with both he and his son where both officer's placed their hands on their weapons (Tr. at 91); however, Defendant admits that the officers allowed Defendant to enter a room alone, shut the door and handle a loaded gun only moments after the aggressive exchange. It is hard for this Court to believe a police officer would be so callous with officer safety in the face of a "heated" confrontation.

Later on in the hearing, Defendant testified he was "discombobulated, " "in a delusion," and went from "being a victim to being victimized" at the time he signed the written consent form, even testifying no writing was present on the paper when he signed it. (Tr. at 93, 108, 111,

5

112, 113, 117). Defendant changed his story quickly once shown the signed consent form and admitted there was writing on the form, but that he was not wearing his glasses. Defendant then put on his glasses and again changed his story, admitting that there was writing on the form, but his address was not filled in at the time.

In applying the deferential standard to the M&R, and after reviewing the recording of the suppression hearing, the Court agrees with the facts as determined in the M&R. Consequently, the Court overrules Defendant's objections to the M&R's credibility determination and ADOPTS the facts as set forth in the M&R. (Doc. No. 20).

### B. CONSENT

Defendant specifically objects to the M&R's determinations that (1) Defendant "willingly" allowed officers back into his home after they informed him they smelled burnt marijuana, (2) Brown's background supported voluntary consent, and (3) Russell's discussion with Brown regarding search warrant procedure was not coercive. (Doc. No. 24).

"A search authorized by consent is wholly valid." Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Yet, "when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth . . . Amendment[] require[s] that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." Id. at 248. Whether consent is voluntary "is a question of fact to be determined from all circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Id. at 248-49 (concluding courts should consider age, maturity, education, intelligence and experience of accused; also the conditions

present when consent was given including officer conduct, number of officers, and duration, location and time of the encounter).

Although Defendant now apparently regrets agreeing to let Officer Russell enter his home, his remorse after the fact does not invalidate the initial consent. United States v. Mendenhall, 446 U.S. 544, 555-56 (1980) ("It may happen that a person makes statements to law enforcement officials that he later regrets, but the issue in such cases is not whether the statement was self-protective, but rather whether it was made voluntarily.") Nothing in the record inherently suggests the oral or written consent was involuntary. At the time of the search Defendant was forty-nine (49) years old, had an 11th grade education, and was employed as a maintenance supervisor with Time Warner Cable Arena. Defendant has had several contacts with law enforcement over the years and admitted he was familiar with the legal system "to an extent." (Tr. at 96). Russell even described Defendant as "one of the nicest people [he had] ever encountered in a situation like that." (Tr. at 16).

The conditions under which consent were given also fail to illuminate evidence of involuntariness. The entire encounter lasted about forty-five minutes to an hour. Russell and Anderson were present for the duration of the encounter with four civilians present in the home; one of which remained undiscovered until Russell entered Defendant's bedroom. Additional officers arrived only after Russell gave both oral and written consent against his son's advice. Even further, it was Defendant who opened the door for one of the additional officers to let him into the home.

Defendant argues Russell coerced Defendant into giving consent when he informed Defendant that if consent was refused, Russell would apply for a search warrant. (Doc. No. 24). The discussion of the warrant process however, is but one fact to consider and, even further, an

officer's statement that he would apply for a search warrant if consent is refused is not coercive. See United States v. Short, 387 F. App'x 308, 316 (4th Cir. 2010); United States v. Morgan, No. 3:04CR261, 2005 WL 2662761, at *6-7 (W.D.N.C. October 19, 2005) (Conrad, J.). Consequently, the Court overrules Defendant's three specific objections to the M&R's voluntary consent determinations.

### C. SEIZURE

Defendant's fourth objection argues that the M&R erroneously "rel[ied] on the [G]overnment's reply motion as opposed to the testimony at the suppression hearing" to determine Defendant was not illegally seized because the "facts and testimony elicited at the suppression hearing overwhelmingly show that [Defendant] was seized during the encounter." (Doc. No. 24). Certainly, relying on Defendant's self-serving testimony alone, does show a seizure occurred. Defendant testified Russell repeatedly "insinuated" Defendant was a drug dealer, grabbed Defendant's t-shirt, repeatedly touched his weapon, was involved in a "heated" moment that caused Defendant concern for his son's welfare, and told Defendant that if he did not consent to a search of the residence, Russell would "lock [him] out the house, lock the whole house down" and "call a search team out here and dogs." (Tr. at 77, 87-88).

The Court chooses, however, as the M&R elects, to rely on Officer Russell's testimony to determine the facts of the matter. As previously discussed, Defendant recounts a hostile, threatening situation involving four civilians and two officers. Yet, Defendant admits he was neither handcuffed nor physically restrained but allowed to enter a room alone with another civilian, shut the door behind him, and later handle a loaded weapon. The Court agrees Defendant's testimony "just did not make sense." (Doc. No. 20).

Applying Officer Russell's account, the Court finds Defendant was not unlawfully seized. A person is considered seized in violation of the Fourth Amendment "if the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded." INS v. Delgado, 466 U.S. 210, 215 (1984). "Voluntariness is not, however, to be equated with the absolute absence of intimidation for under this test virtually no statement would be voluntary." United States v. Pelton, 835 F.2d 1067, 1072 (4th Cir. 1987) (internal quotation marks and citations omitted).

The determination of "[w]hether a seizure occurred at all is an intensely fact-bound matter." United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991) (citing United States v. Gordon, 895 F.2d 932, 937 (4th Cir. 1990)). A number of factors are used to determine whether an individual is illegally seized:

> (i) the number of police officers present at the scene; (ii) whether the police officers were in uniform; (iii) whether the police officers displayed their weapons; (iv) whether they touched the defendant or made any attempt to physically block his departure or restrain his movement; (v) the use of language or tone of voice indicating that compliance with the officer's request might be compelled; (vi) whether the officers informed the defendant that they suspected him of illegal activity rather than treating the encounter as routine in nature; and (vii) whether, if the officer requested from the defendant . . . some form of official identification, the officer promptly returned it.

United States v. Black, 707 F.3d 531, 537-38 (4th Cir. 2013) (internal quotation marks and citations omitted.

The Court agrees that "the record is replete with facts showing Defendant was not illegally 'seized.'" (Doc. No. 20). There were four civilians and two officers present when oral and written consent was given. Neither officer ever drew their weapon, even when Defendant handled a loaded weapon against Officer Russell's instructions. Defendant was not restrained or

handcuffed at any time nor told he was under arrest. No restrictions were placed upon the officer's questions or entrance into the home and Defendant moved about the house freely during the encounter. Accordingly, the Court ADOPTS the M&R and finds Defendant was not unlawfully seized.

### D. MIRANDA

Defendant's Counsel failed to make a specific objection to the Miranda issue raised at the hearing on this matter and discussed in the M&R. The Court finds it unnecessary to discuss the Miranda issue raised because absent a specific objection by the Defendant, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

### IV. CONCLUSION

For these reasons, the Court concludes that the M&R's findings are supported by the record and the conclusions of law are consistent with current case law. Accordingly, the Court OVERRULES all Defendant's objections and ACCEPTS and ADOPTS the M&R's recommendation that Defendant's Motion to Suppress Evidence (Doc. No. 8) be DENIED.

IT IS SO ORDERED.

Signed: June 3, 2014

_____
Frank D. Whitney
Chief United States District Judge