# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:16-cv-555-FDW
### (3:13-cr-275-FDW-1)

| | |
|---|---|
| KENNETH FITZGERALD BROWN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )       **ORDER** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| ———————————————————— | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct

Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and motion to amend, (Doc. No. 4). The motion

to amend will be granted and § 2255 relief will be denied.

## I.    BACKGROUND

Petitioner was charged in the underlying criminal case with: Count (1), possession of a

firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); and Count (2), possession of a

detectable amount of marijuana in violation of 21 U.S.C. § 844(a). (Crim. Case No. 3:13-cr-275,

Doc. No. 7). Both offenses were alleged to have occurred on or about April 5, 2013. (Id.).

Petitioner filed a motion to suppress through counsel, arguing that the firearm, marijuana,

and Petitioner's statements were the fruit of an illegal search and seizure. (Id., Doc. No. 8). An

evidentiary hearing came before Magistrate Judge Keesler at which Petitioner and Officer Brian

Russell testified, summarized as follows:

> On April 5, 2013, Officers B.K. Russell ("Russell") and R.M. Anderson
> ("Anderson") visited Defendant at his residence to conduct an investigatory follow-
> up of a break-in that occurred at Defendant's home the night before. Defendant

does not dispute he invited both officers into his residence at this juncture. Russell entered Defendant's living room through the front door and immediately smelled the odor of burnt marijuana. Three people were in the living room: Defendant, Defendant's son, and a repairman working on the back door. After fifteen minutes conversing with the officers inside the residence, Defendant led both officers to the backyard. While outside, Anderson tapped her nose in Russell's direction. Officer Russell testified "that's something we typically do.... If we made any kind of—you know, I guess notice of an odor like [marijuana], that would be the way we would indicate that between ourselves ..."

While still outside, Russell told Defendant he smelled marijuana. Defendant admitted there was marijuana inside the home, and Russell asked if he could go inside to retrieve it. Defendant verbally consented, opened the front door of the home and stood sideways, motioning for the officers to re-enter. Once inside, Russell asked Defendant where the marijuana was located, and Defendant said it was in the bedroom. Defendant led both officers to a partially closed door and asked if the officers could wait outside while he entered the room to ensure his girlfriend was "decent." Russell allowed Defendant to enter the room and close the door. Defendant opened the door after a minute or two and Russell observed Ms. Katie Gowen, Defendant's girlfriend, lying on the left side of the bed. Russell inquired again about the marijuana. Defendant handed Russell an aluminum foil, homemade pipe that appeared to contain marijuana residue and a container that appeared to hold several marijuana roaches.

Reacting to Defendant's heightened nervousness at the time, Russell asked if there were any weapons in the house. Defendant answered yes, proceeded to the left side of the bed and grabbed a gun from under the mattress. Russell repeatedly instructed Defendant not to retrieve the gun but Defendant removed the clip from the gun, ejected a live round from the chamber, reloaded the round into the clip, and placed the gun and clip on the bed. In the same few seconds, Russell released the small, belted latch over his own weapon but did not draw.

At that point, Russell smelled the odor of "green marijuana" and asked Defendant if there was any more in the home. Defendant told Russell there was marijuana, and Ms. Gowen handed a jar of what appeared to be marijuana to Russell. Russell asked if he, Anderson, Defendant and Ms. Gowen could talk further in the living room and Defendant agreed.

After Defendant and Ms. Gowen led Russell and Anderson to the living room, Russell asked Defendant for consent to search the rest of the residence. Defendant asked about the process, and Russell explained that Defendant could consent as he had up to that time, or if he declined, Russell would apply to a judge for a search warrant. Defendant's son, who was present in the living room, advised Defendant to require the officers to obtain a search warrant. Defendant chose to consent to the search, and Russell went out to his patrol car to retrieve the paperwork and call for additional officers. Upon Russell's return, Defendant

reviewed, signed, and dated the consent to search form. The additional officers arrived, and Defendant himself opened the door for one of the officers and allowed him inside the house. During this time, Defendant got up to pay the repairman for the repair of the back door. In addition to the marijuana, paraphernalia, gun and ammunition found, officers took photographs and seized United States Currency. Both the Defendant and Ms. Gowen were placed under arrest.

United States v. Brown, 2014 WL 2511378 at *1–2 (W.D.N.C. June 4, 2014) (citations omitted).

Judge Keesler concluded that Petitioner's suppression hearing testimony was incredible and impossible to reconcile with the other evidence presented, and that no Fourth Amendment violation occurred. (Case No. 3:13-cr-275, Doc. Nos. 20, 23). The Court adopted Judge Keesler's recommendations and denied Petitioner's motion to suppress. (Id., Doc. No. 27).

The case came before the Court for a bench trial on July 15, 2014, at which time the Court questioned the legal basis for conducting a bench trial rather than a jury trial. The parties explained that they had agreed to a bench trial because Petitioner stipulated to the majority of the elements yet wanted to preserve his right to appeal the suppression issue, yet the Government would not agree to a conditional plea:

> THE COURT: … Let me first ask the Government. What's the Government's purpose in entering into this stipulated trial?
>
> MS. FERRY: Your Honor, as Ms. Oseguera indicated previously, **we are unwilling to do a conditional plea in this circumstance**. We understand that the defendant wishes to preserve his appellate rights, and we want to do that in a way that is going to be the most expeditious for all parties involve. That is one of the reasons we agreed to a bench trial in this case.
>
> THE COURT: **So you refuse to enter into an 11(b) conditional plea**?
>
> MS. FERRY: **That's correct**.

(Id., Doc. No. 29 at 2) (emphasis added).

Defense counsel agreed with the Government that a bench trial was appropriate to preserve Petitioner's appellate rights because the Government would not agree to a conditional plea:

MS. OSEGUERA: … I do agree with the Government in this case, and the reason I do and, you know, speaking on behalf of my client, Your Honor, is because **we are trying to preserve his appellate issue**.

He had a constitution right to file a motion. It was not frivolous. I filed the motion. It was very, very debated in front of the magistrate judge. **I have been asking the Government for a conditional plea since the beginning.** Since – I think their e-mails go back to December of last year requesting a conditional plea.

**I just as recently as last Tuesday right after we got out of court, Your Honor, again I asked for a conditional plea in this case**. The Government responded with this is a – the suppression issue is a factual dispute, not a legal dispute. And again, I'm still trying – I continue to ask the Government what is a legal dispute? What did I not bring up properly?

But, again, I don't believe the motion was frivolous. It was not bare bones either. It was highly contested.

What we are – the reason we are agreeing with the Government – initially we did not want to stipulate anything, because the Government informed me that they did not want to at sentencing provide acceptance of responsibility points. They did start bringing up obstruction of justice, because my client did testify at the suppression motion.

**So today, Your Honor, again, we are accepting responsibility as much as we can for this offense**. We're trying to make this as easy as possible for the Government and for the Court so we can get to sentencing.

And I did speak with my client, Mr. Brown, and he has agreed to continue the case until the September docket call, and we can move forward with a jury trial. At that point we will remain silent, but we will move forward with a jury trial at that point.

(Id., Doc. No. 29 at 13-14) (emphasis added).

The Court disagreed with the parties about the appropriateness of a bench trial with factual stipulations, finding that Fourth Circuit case law suggested that such a proceeding would waive Petitioner's appellate rights, and set the case for a jury trial, which commenced September 3, 2014.

At the start of the jury trial, the Court conducted a colloquy with Petitioner about his knowing and voluntary agreement to signed stipulations addressing to several elements of the offenses. Petitioner stated that he understood the Government's burden of proof and nevertheless

wished to stipulate to the factual issues. (Id., Doc. No. 52 at 26-32). The Court then addressed the existence of any plea offers. The parties were unclear on the history of the plea negotiations and agreed to check the record to address the issue more accurately on the next day of trial. In open court, defense counsel proposed a plea to Count (2) and dismissal of Count (1), but the prosecutor stated on the record that the Government was not interested. (Id., Doc. No. 52 at 34).

The parties addressed the status of the Government's best plea offer on the next day of trial as follows:

> THE COURT: … Ms. Ferry, do you know what the last best offer was for Mr. Brown?
>
> MS. FERRY: Yes, sir. **We had extended him a plea agreement before the superseding indictment was returned, which would be a plea to Count One, the 922(g) count**. And then once that was rejected, we superceded and had the drug charge added as well.
>
> MS. OSEGUERA: That's correct, Your Honor.
>
> THE COURT: **Mr. Brown, do you understand that was the offer extended to you by the United States?**
>
> THE DEFENDANT: **Yes**.
>
> THE COURT: All right. **And you, with consultation with your attorney, you waived or rejected that offer; is that correct?**
>
> MS. OSEGUERA: Your Honor, let me – it was a while – it was a while ago back in November.
>
> THE COURT: Sure.
>
> (Defense counsel and defendant conferred off the record.)
>
> THE COURT: **Is that correct, sir?**
>
> THE DEFENDANT: **Yes, sir, it is.**

(Id., Doc. No. 53 at 4-5) (emphasis added).

At trial, Officer Brian Russell who testified consistently with his suppression hearing testimony. (Id., Doc. No. 53 at 18). The Government also called Officer Benjamin West, who arrived at Petitioner's residence to assist with photographing evidence. West testified that Petitioner was cordial and allowed him to come inside to take photographs of a firearm and ammunition which were introduced at trial. (Id., Doc. No. 53 at 41-43).

The Government read the parties' trial stipulations into the record indicating that: Petitioner was a convicted felon on the date of the offense; the pistol recovered from his residence was a firearm that traveled in and affected interstate commerce; and that the substance recovered from Petitioner's residence is marijuana weighing 37.84 grams. (Id., Doc. No. 53 at 47-48).

Defense counsel did not conduct any cross-examination, present any evidence, make any motions, or present closing argument. (Id., Doc. No. 53 at 41, 46, 49, 53, 69). Petitioner confirmed to the Court that he did not wish to testify and would "go with the government." (Id., Doc. No. 53 at 52).

The jury found Petitioner guilty of both counts. (Id., Doc. Nos. 34, 53 at 74).

The Presentence Investigation Report ("PSR") scored the total offense level based on Count (1) because it had the higher of the two adjusted offense levels. (Id., Doc. No. 42 at 34). The base offense level was 24 because Petitioner committed the instant offense after having sustained two felony convictions for controlled substance offenses. (Id., Doc. No. 42 at ¶ 21). Two levels were added because the firearm at issue was reported stolen. (Id., Doc. No. 42 at ¶ 22). No Chapter Four enhancements were added. (Id., Doc. No. 42 at ¶ 37). No deduction was made for acceptance of responsibility. (Id., Doc. No. 42 at ¶ 38).The resulting total offense level was 39. (Id. Doc. No. 42 at ¶¶ 27, 31, 32). The PSR's criminal history section scored 11 criminal history points and a criminal history category of V. (Id., Doc. No. 42 at ¶¶ 64, 65). The resulting guidelines

range was 130-162 months' imprisonment, however, the statutory maximum is 120 months for Count (1) and 1 year for Count (2), which become the guidelines range. (Id., Doc. No. 42 at ¶ 116).

Defense counsel filed objections to the PSR arguing, *inter alia*, that the enhancement for obstruction of justice is inapplicable and that Petitioner should be granted a reduction for acceptance of responsibility. (Id., Doc. No. 37).

At the sentencing hearing, Petitioner confirmed that he understood the PSR and discussed it with counsel. (Id., Doc. No. 54 at 5-6). Counsel argued that Petitioner should not have received a two-level enhancement for obstruction of justice because he was being punished for exercising his constitutional rights of filing a suppression motion and testifying at the suppression hearing. (Id., Doc. No. 54 at 7). The Court disagreed and concluded, after having listened to the suppression hearing testimony, that Petitioner's testimony at that hearing was willfully and materially false. (Id., Doc. No. 54 at 14-15).

Counsel requested a three-level reduction for acceptance of responsibility because the Government refused to enter into a conditional plea and, absent that option, Petitioner had accepted responsibility by entering into stipulations to the best of his ability. (Id., Doc. No. 54 at 17). The Court overruled the objection, noting that the Government does not have to enter into a conditional plea, the Court cannot order one, and Petitioner could have pled "straight up" once the Government made clear that a conditional plea was not forthcoming. (Id., Doc. No. 54 at 17-20, 26). The Court overruled defense counsel's PSR objections and concluded that the applicable range is 130-162 months' imprisonment, which is lowered to the statutory maximum of 120 months. (Id., Doc. No. 54 at 36).

Defense counsel requested a downward variance to 36 months' imprisonment based on § 3553 factors including Petitioner's work history and family circumstances. (Id., Doc. No. 54 at 36-

37). Petitioner chose to address the Court and stated that he felt he had been "experimented on" through the whole process because he never asked for a "conditional plea" or "stipulation trial" and does not know what they are. "All I ever told my lawyer was that I just wanted to admit my guilt and get it over with and move on, and move on. Okay? My lawyer said trust her, she's got it. That's all I had my faith in. I don't know much about the law to say, okay, do it that way; okay, do it this way; do it that way." (Id., Doc. No. 54 at 52).

The Government recommended a modest variance below the guideline range to 110 months' imprisonment. (Id., Doc. No. 54 at 53).

The Court concluded that a downward variance was appropriate because Petitioner did not dispute most elements of the crime and was trying to be a productive member of society when he was arrested. (Id., Doc. No. 54 at 63). However, negative factors included his criminal history and deterrence. (Id., Doc. No. 54 at 63-64). The Court thus arrived at a sentence of 90 months' imprisonment as to Count (1) and 12 months' imprisonment as to Count (2), concurrent, followed by two years of supervised release. (Id., Doc. No. 54 at 65-66); (Id., Doc. No. 44). The Court explained that this is the sentence it would have imposed regardless of the advisory guidelines, stating "I was looking at it basically what's a fair and just punishment in this case without looking at a metric of the guidelines." (Id., Doc. No. 54 at 70).

Petitioner argued on appeal that his sentence was procedurally unreasonable because the Court erred in applying a sentencing enhancement for obstruction of justice and denying a sentence reduction for acceptance of responsibility. The Fourth District affirmed on May 4, 2016, finding that the Court's determination that Petitioner obstructed justice was not clearly erroneous, and that the application of that enhancement foreclosed Petitioner's argument that he was entitled to an

adjustment for acceptance of responsibility. <u>United States v. Brown</u>, 647 Fed. Appx. 267 (4th Cir. 2016).

Petitioner filed the instant § 2255 motion to vacate and supporting memorandum on July 12, 2016, arguing that (renumbered): (1) trial counsel was ineffective: (A) with regards to plea negotiations for wrongfully advising Petitioner to proceed to trial, failing to adequately discuss the advantages and disadvantages of pleading, failing to secure a plea agreement pursuant to his request, and failing to convey a Government plea offer, all of which prejudiced him with a longer sentence; (B) with regards to sentencing for failing to investigate the law and facts and determine that his prior convictions should not have been scored in the PSR's criminal history section; failing to object to the enhancement for obstruction of justice; failing to request a reduction for acceptance of responsibility; and failing to argue the sentence was procedurally unreasonable due to the obstruction of justice enhancement; and (2) appellate counsel was ineffective for failing to argue on direct appeal that the sentence was procedurally unreasonable because the Court erroneously relied on the enhancement for obstruction of justice.

Petitioner filed a motion for leave to amend and a supporting memorandum on August 23, 2017, in which he provides additional argument in support of Claim (1) (A), and elaborates on his sentencing argument in Claim (1)(B). (Doc. No. 4).

The Motion to Amend will be granted insofar as Petitioner's new arguments will be entertained in the Discussion section, *infra.*[1]

---

[1] The Court agrees with Petitioner that the arguments raised in his amended § 2255 motion to vacate relate back to the original, timely § 2255 motion to vacate. <u>See</u> Fed. R. Civ. P. 15(c)(1)(B) (for an untimely claim relate back to the original timely-filed pleading, it must be shown that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."); <u>Mayle v. Felix</u>, 545 U.S. 644, 664 (2005) (in the context of a habeas motion, "conduct, transaction, or occurrence" does not mean the same "trial, conviction, or sentence," such that any claim that relates to the prior conviction or sentence challenged in a habeas motion is considered timely, no matter how long after the original motion it is filed. Rather, a proposed amendment relates back to the date of the original motion if it "state[s] claims that are tied to a common core of operative facts.").

## II.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in

---

Piecemeal pleading is not generally permitted, however, the Court has not ordered Petitioner to file a single superseding amended § 2255 motion to vacate in this case in the interest of judicial economy.

that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Frye, 566 U.S. at 145. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient

performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel, as well as a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Id. at 147. It is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Id.

Strickland also applies in the context of appellate representation. To show prejudice in such cases, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

### III.     DISCUSSION

**(1)     Ineffective Assistance of Trial Counsel**

Petitioner contends that trial counsel was ineffective with regards to the plea process and sentencing. These arguments will be addressed in turn.

**(A)     Plea Negotiations**

In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b); see, e.g., United States v. Ray, 547 Fed. Appx. 343 (4th Cir. 2013) (it was abuse of discretion for failing to conduct an evidentiary hearing on petitioner's claim of ineffective assistance with regards to a plea offer where

"[t]he record as it stands bare" and, other than petitioner's own assertions in his affidavit and pleadings, there was no evidence as to what transpired between petitioner and counsel during the plea negotiations, what advice counsel gave him about the plea offer at issue, and on what basis).[2] In the instant case, however, no evidentiary hearing is required because Petitioner's claims are conclusively refuted by the record for the following reasons.

First, Petitioner contends that counsel was ineffective for failing to reach a plea agreement with the Government. Counsel stated in open court on several occasions that she had attempted, since early in the representation, to negotiate a conditional plea with the Government that would have preserved Petitioner's right to appeal the denial of his suppression motion. However, the Government explained in open court that it was unwilling to accept a conditional plea in this case. Counsel cannot be deemed ineffective for failing to obtain a plea that the Government was not willing to offer, or conversely, for obtaining an offer containing terms that Petitioner was unwilling to accept.

Counsel was not ineffective for advising Petitioner to proceed to trial under the circumstances present in this case. The Government was unwilling to enter a conditional plea, and a "straight up" plea would have waived Petitioner's ability to appeal the suppression issue. Counsel attempted to avoid this outcome by having a bench trial, which the Court rejected. The only available option for Petitioner that would have preserved his appellate rights regarding the suppression issue under these circumstances was a jury trial. Petitioner fails to explain what more counsel could have done to reach a plea agreement in light of the Government's refusal to provide

---

[2] Unpublished opinions are not ordinarily accorded precedential value, and are "entitled only to the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted)).

a conditional plea. The fact that counsel's persistent attempts to negotiate a conditional plea ultimately failed does not mean that counsel performed deficiently.

Petitioner's claim that counsel failed to convey a Government plea offer to him is conclusively refuted by the record. Petitioner stated in open court that he understood the Government's best plea offer and had rejected it. His present self-serving, unsupported and conclusory statements that counsel failed to convey that plea are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Petitioner's allusion to counsel's failure to adequately discuss the advantages and disadvantages of pleading with him is too vague and conclusory to support a claim of ineffective assistance. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

Even if Petitioner had been able to demonstrate deficient performance, this claim would still fail because he cannot show prejudice. First, Petitioner fails to allege unequivocally that he would have accepted the Government's plea agreement but for counsel's alleged misadvice. The record indicates that Petitioner was only willing to accept a conditional plea, which the Government stated on the record that it was unwilling to extend. Petitioner cannot have been prejudiced by any misadvice or other deficiency by counsel where the Government was unwilling

to extend the terms Petitioner found acceptable. See, e.g., Frank v. United States, 522 Fed. Appx. 779 (11th Cir. 2013) (defendant could not demonstrate prejudice even if counsel performed deficiently because the record showed that he would not accept any plea that would require him to register as a sex offender and the government's offer included that requirement).

Second, Petitioner's contention that he would have received a lower sentence had he pled guilty is incorrect. Petitioner argues that, had he pled guilty, there is a reasonable probability that he would have received a lower sentence by avoiding the two-level enhancement for obstruction of justice and receiving a three-level reduction for acceptance of responsibility. This argument fails because Petitioner's 90-month downward variance sentence falls within the lower guidelines range that he proposes.

The PSR scored Petitioner as an offense level of 28 and criminal history category of V with an advisory range of 130-162 months' imprisonment, which was reduced to the statutory maximums of 120 months for Count (1) and one year for Count (2). The Court varied below the advisory range to 90 months for Count (1) due to § 3553 factors. The Court specifically found that this was the appropriate sentence without regard to the advisory guidelines. Assuming that Petitioner had pled guilty and received a three-level reduction for acceptance of responsibility and no enhancement for obstruction of justice, his offense level would have been 23 with a guideline imprisonment range of 84-105 months. Petitioner's 90-month downward variance sentence is within that lower guideline range so Petitioner is unable to demonstrate a reasonable probability that his sentence would have been lower had he pled guilty.

Accordingly, Petitioner has failed to demonstrate neither deficient performance nor prejudice, and his claim that trial counsel was ineffective with regards to plea negotiations is denied.

**(B)**     **Sentencing**

Petitioner contends that trial counsel was ineffective with regards to sentencing for failing to challenge his criminal history score, offense level calculation, and the procedural reasonableness of his sentence.

With regards to criminal history, Petitioner argues that counsel was ineffective for failing to investigate and object to the scoring of two prior convictions, 60CRS254862 and 97CRS39047,[3] which should not have received criminal history points.

First, Petitioner contends that counsel should have objected to the PSR's inclusion of Mecklenburg Superior Court case number 06CRS254826 in the criminal history section because Petitioner provided evidence demonstrating that he is innocent of that offense due to misidentification.

With one limited exception, a prior State court conviction may not be challenged in a federal sentencing proceeding. If, by the time of federal sentencing, a prior State conviction has not been set aside on direct or collateral review, that conviction is "presumptively valid and may be used to enhance the federal sentence." Daniels v. United States, 532 U.S. 374, 392 (2001) (citing Custis v. United States, 511 U.S. 485, 496-97 (1994)). The sole exception to this rule is for prior convictions obtained without the right to counsel in violation of Gideon v. Wainwright, 372 U.S. 335 (1963). Id.

The PSR indicates that Petitioner was represented by counsel in case number 06CRS254826 and Petitioner has not come forward with proof to the contrary. (Crim. Case No. 3:13-cr-275, Doc. No. 42 at ¶ 59). Therefore, trial counsel had no legal basis upon which to object to that conviction's validity at the time of sentencing.

---

[3] Petitioner refers to this case number in his amended § 2255 petition as 97CRS390470.

Second, with regards to the conviction in Mecklenburg Superior Court case number 97CRS39047, Petitioner claims that this conviction is too old to receive criminal history points, and that he was not on probation for the 1997 case when he committed the instant offense.

The United States Sentencing Guidelines provide that three points are added for each prior sentence of imprisonment that exceeds one year and one month. U.S.S.G. § 4A1.1(a) (2012). In the case of a prior revocation of probation, parole, or supervised release, the original term of imprisonment is added to any term of imprisonment imposed upon revocation, and the resulting total is used to compute the criminal history points pursuant to § 4A1.1(a). U.S.S.G. § 4A1.2(k)(1) (2012). Any prior sentence of imprisonment exceeding a year and a month that was imposed within 15 years of the defendant's commencement of the instant offense is counted. U.S.S.G. § 2A1.2(e)(1) (2012). However, a prior sentence is not counted if it is imposed more than 15 years prior to the defendant's commencement of the instant offense, unless defendant's incarceration extended into the 15-year period. Id.; U.S.S.G. § 4A1.1, App. Note 1 (2012).

The PSR indicates that the conviction in case number 97CRS39047 was for felony possession of a firearm by a convicted felon, for which Petitioner was arrested on October 6, 1997. (Crim. Case No. 3:13-cr-275, Doc. No. 42 at ¶ 50). Petitioner was sentenced on December 10, 1997, to 16-20 months' imprisonment, which was suspended, and 36 months of supervised probation. (Id.). The probation was revoked on December 21, 2000, and he was sentenced to 16-20 months' imprisonment with credit for 179 days of time previously served. (Id.). He was actually released from his sentence on January 2, 2001. (Doc. No. 4-2 at 4). The instant offense occurred on or about April 5, 2013.

The conviction in case number 97CRS39047 was correctly scored three criminal history points because Petitioner was sentenced to a minimum total of 16 months' imprisonment when

accounting for time served before and after the revocation of his probation, which exceeds the one year and one month threshold contained in § 4A1.1(a). He was released from imprisonment on January 2, 2001, which is less than fifteen years from the instant offense date of April 5, 2013. The PSR does not include an enhancement for being on probation at the time of the instant offense, therefore, Petitioner's suggestion that he received such an enhancement is mistaken.

No calculation error occurred with regards to the scoring of case numbers 06CRS254826 and 97CRS39047 in the PSR's criminal history section, so counsel was not deficient for failing to object. See generally Fretwell, 506 U.S. at 374 (a defendant is not prejudiced if his counsel fails to make an objection that is "wholly meritless under current governing law").

Next, Petitioner contends that counsel was ineffective for failing to object to the enhancement for obstruction of justice, and for failing to request a reduction for acceptance of responsibility. This claim is conclusively refuted by the record. Counsel filed PSR objections and argued at length during the sentencing hearing that the enhancement for obstruction of justice does not apply, and that Petitioner should be granted credit for acceptance of responsibility even though he did not plead guilty. Petitioner fails to explain what more counsel could have done to present these arguments that would have probably succeeded and resulted in a different outcome. See generally Dyess, 730 F.3d at 354.

Finally, Petitioner argues that trial counsel was ineffective for failing to argue that the sentence was procedurally unreasonable due to the obstruction of justice enhancement. The Court will not entertain this claim because the Fourth Circuit previously rejected the substantive sentencing claim on the merits on direct appeal.

It is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." Dyess, 730 F.3d at 360 (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]").

Appellate counsel argued on direct appeal that the sentence was procedurally unreasonable due to the Court's application of the enhancement for obstruction of justice and for denying a reduction for acceptance of responsibility. The Fourth Circuit affirmed, finding that the obstruction of justice enhancement was not clearly erroneous and that application of that enhancement foreclosed Petitioner's argument that he was entitled to an adjustment for acceptance of responsibility. Brown, 647 Fed. Appx. at 268. Petitioner has failed to allege any changed circumstances that warrant revisiting these issues. Therefore, this claim is denied.

Moreover, Petitioner cannot demonstrate prejudice because there is no reasonable probability the Court would have imposed a lower sentence but for counsel's alleged errors. The Court explained at the close of the sentencing hearing that it would have imposed the same 90-month sentence regardless of any guidelines issues, when considering the totality of the circumstances. (Case No. 3:13-cr-275, Doc. No. 54 at 70). Therefore, even if counsel had succeeded on any of the foregoing scoring issues, the sentence would have been unchanged.

Petitioner has failed to demonstrate either deficient performance or prejudice with regards to the sentencing issues he has raised, therefore, this claim is denied.

**(2)      Ineffective Assistance of Appellate Counsel**

Petitioner appears to argue that appellate counsel was ineffective for failing to argue on direct appeal that the sentence was procedurally unreasonable because the Court erroneously relied on the enhancement for obstruction of justice.

This claim is conclusively refuted by the record. Counsel argued on direct appeal that the sentence was procedurally unreasonable because the Court erred by applying a sentence enhancement for obstruction of justice. <u>See</u> Section III(1)(B), *supra.* Petitioner has failed to explain what more counsel could have done that would have probably resulted in a successful appeal of this issue.

Therefore, Petitioner's claim of ineffective assistance of appellate counsel will be denied.

**IV.      CONCLUSION**

For the foregoing reasons, the Court grants Petitioner's motion to amend and denies Petitioner's § 2255 petition, as supplemented by the amended petition, on the merits.

**IT IS, THEREFORE, ORDERED** that:

1.      Petitioner's Motion to Amend, (Doc. No. 4), is **GRANTED**.

2.      The Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

3.      IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is

denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: November 1, 2017

Frank D. Whitney
Chief United States District Judge